## COONEY v. UNITED STATES et al.
### No. 14940.

District Court, W. D. Washington, N. D.
Dec. 20, 1946.

Levinson & Friedman, of Seattle Wash. (Sam L. Levinson and Edwin J. Friedman, of counsel), for libelant.

J. Charles Dennis, U. S. Atty., and Bogle, Bogle & Gates, all of Seattle, Wash. (Edw. S. Franklin, of Seattle, Wash., of counsel), for the U. S., respondent.

Bogle, Bogle & Gates, of Seattle, Wash. (Edw. S. Franklin, of Seattle, Wash., of counsel), William J. Rountree & Co. and William-Dimond & Co., respondents.

Edward M. Hay and David O. Hamlin, both of Seattle, Wash. (David O. Hamlin, of Seattle, Wash., of counsel), Griffith & Sprague Stevedoring Co., respondent.

BOWEN, District Judge.

In this case the libelant was, on the occasion of the accident, engaged in the performance of his duties. At the moment, he was proceeding along the main deck on the port side of the open Number 2 hatch with certain tools in his hands and in his pockets and about his person while on his way to work on one of the cargo winches. While so proceeding he stepped upon some piled or loosely thrown hatch boards which had been taken off the hatches and left on deck portside of the Number 2 hatch, and he was precipitated by some movement or giving away of the hatch boards or he slipped by reason of some condition about the hatch boards, and thereby he was thrown to the deck and against or upon a so-called padeye that was riveted or welded to the deck.

The eye portion of the padeye extended above the deck and caused an obstruction to footsteps or movable objects moving along the surface of the deck. As a result libelant sustained a broken thigh bone (femur) just above the knee in the left leg. He was hospitalized, the fracture was reduced, and about three and one-half months after the original accident the leg in the same place was refractured accidentally while the libelant was on his bed and he again went through hospitalization treatment, including the application of casts and the tractioning of his leg. Finally the fracture of the left femur has been reduced and the Court finds, concludes, and decides that recovery has been effected to the extent that the condition has become permanently arrested, and libelant has a recovery of the functional use of that leg of approximately 70 or 75 per cent of the normal use of the leg; and that as to the remainder of unrestored use of about 25 per cent, he has sustained permanent injury and will not regain the present depreciated loss of functional efficiency in the leg. Whether or not negligence of respondents or the unseaworthy condition of the vessel was a direct and proximate cause of this injury to the libelant turns upon sharply conflicting evidence.

The Court believes that the condition of the hatch boards, as they were piled or strewn upon that deck in and about those padeyes, created an unseaworthy and negligent condition of that deck, and the Court finds, concludes and decides that the proximate cause of the injuries and damages sustained by libelant was that unseaworthy and negligent condition.

The Court is aware of the statements made by some of the ship's officers that there was a clear passageway. It is possible that the Captain may have made an investigation at the time. I think in view of all of the testimony in the case that the ship's officers may have thought it was possible for one to walk through the passageway between the hatch coaming and the pile of hatch boards,—from what investigation they made and not knowing the particular thing that happened, as to whether or not libelant may have caught his foot or heel in one of those padeyes or whether or not his foot or heel slipped off of the top of a hatch

board pile or the top of one hatch board, or whether or not the hatch board moved or shifted in some way and threw or precipitated the libelant to the deck. The libelant himself perhaps may not have been as certain in his own mind at the time the accident happened as to what may have caused it as he is now. He may have had some schooling or discussion upon the subject after the event. And respondents or their witnesses likewise may have had some schooling and discussion after the event concerning the possible causes. All of them may articulate afterwards more definitely in response to questions on cause and effect than they did at the time of or soon after the accident, but I think there is nothing inherently contradictory of the libelant's original statements that he did not know what caused the accident. His later statements that in effect he stepped on the boards and went down do not seem to me to disprove that he did not originally know exactly what caused him to go down. It is now established by the credible evidence that he stepped upon those boards and went down against or caught his foot or heel in the eye of the padeye, thereby sustaining his injuries.

■ There is no evidence in the case that he was contributorily negligent in stepping upon the boards. In the absence of proof to the contrary the law presumes that he was exercising due care for his own personal safety.

I think the claim of negligence under the circumstances of this case is supported by the appellate court's view in the Johnson case, involving the wrongful death of an Hawaiian seaman, tried in this court where the decision went against the Administrator of the deceased seaman, but on appeal this court was reversed and the appellate Court held that there was evidence of negligence requiring a decision for libelant. By that appellate court decision, whatever views this court may have previously had upon the subject of negligence under circumstances similar to these here and those involved in the Johnson case are now required to be modified and they are modified. If the appellate court felt required to hold actionable negligence was made out in the Johnson case, there is in my opinion a better case of negligence made out here than was made out in the Johnson case. Those are some of the reasons which have been considered by the trial judge in coming to a decision in this case.

■ I think the owner and operator of the ship, the United States of America, is liable. Likewise, I think under the facts evidenced by the testimony and the written evidence received here that the additional respondent Griffiths & Sprague Stevedoring Company is liable for causing in the first instance that negligent condition mentioned previously by the Court; that that additional respondent is initially liable to libelant but that the additional respondent should be indemnified by the respondent United States of America under the agreement contained in additional respondent's Exhibit A-2, page 8, Article 4, paragraph 3; and that in case the Griffiths & Sprague Stevedoring Company is required to pay any damages it has a right to recover back such payment from, and to be reimbursed therefor by the respondent United States of America.

I do not see any basis for holding the so-called general agent liable. I do not recall any evidence that it did anything for which it could be held negligent or liable.

Mr. Franklin: If Your Honor refers to Williams-Dimond,—Your Honor had already dismissed William Rountree, the General Agent.

The Court: As to non-liability, the same is true as to the local agent, Williams-Dimond & Company, the local agent of the general agent.

■ As to the amount of damages sustained by the libelant he still has his leg which by reason of the doctor's testimony the Court finds will have a permanent functional efficiency of 70 to 75 per cent. The leg apparently is going to be in sound condition except for that depreciated functional deficiency, and that will show up under such circumstances as will make it not a damage every minute of every day that he works or lives. I believe it will show up more when he is climbing a ladder or stairs than when he is walking on ordinary floors or on substantially level places, but the climbing of ladders will not be required in his work all of the time. On shipboard

such climbing may be required often but not all of the time.

With such physical recovery as the libelant has already obtained there is no convincing evidence that he will not be able to do work on shipboard.

The Court is of the opinion, finds, concludes and decides that the sum of $6,500 constitutes fair and reasonable compensation and will justly compensate libelant for the injuries sustained by him on account of the matters and things involved in this action.